## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Case No. 22-cr-134 (DWF/JFD)

          Plaintiff,

v.                                                              **ORDER**

Doron Tavlin (01) and David Gantman
(03),

          Defendants.

This case is before the undersigned United States Magistrate Judge on the nondispositive pretrial motions filed by the United States of America, Defendant Doron Tavlin, and Defendant David Gantman (Dkt. Nos. 21, 22, 69–77).[1] The Court held a motions hearing on April 5, 2023. Assistant United States Attorneys Kimberly Svendsen and Matthew Ebert appeared on behalf of the United States; Matthew Forsgren and Caitlinrose Fisher, Esqs., appeared on behalf of Mr. Tavlin; and William Mauzy, Esq., appeared on behalf of Mr. Gantman. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

---

[1] Mr. Tavlin filed a Supplemental Motion to Compel the Government to Disclose Favorable Evidence (Dkt. No. 97) on May 9, 2023, long after the deadline for pretrial motions and after the motions heard on April 5, 2023, were taken under advisement. The Court will address the supplemental motion at the end of this Order.

Most of the parties' motions may be ruled on summarily, and the Court has done so below, consistent with the discussions at the motions hearing. However, Mr. Tavlin's Motion for Discovery and Inspection, Mr. Tavlin's Motion to Compel the Government to Disclose Favorable Evidence, and Mr. Gantman's Motion to Compel Disclosure of *Brady* Materials require some discussion.

## I.      Background

As part of his motion for discovery, Mr. Tavlin requests the production of all statements made by him, including statements solely in the possession of the SEC or its attorneys. (Def. Tavlin's Mot. Discovery at 1, Dkt. No. 70.) In his motion for favorable evidence, Mr. Tavlin asks the Court to order the United States to produce any *Brady* and *Giglio* materials that are in the sole possession of the SEC. (Def. Tavlin's Mot. Compel Favorable Evid. at 3, Dkt. No. 71.) Mr. Tavlin argues that the discovery produced to date indicates that the U.S. Attorney's Office ("USAO") and the SEC "have cooperated in this matter." (*Id.*) One such example, according to Mr. Tavlin, is that the Indictment against him was filed just one week before the SEC filed a civil complaint with similar allegations.[2]

---

[2] The Indictment, filed on June 30, 2022, charges Mr. Tavlin, Mr. Gantman, and Afshin Farahan with one count of Conspiracy to Engage in Insider Trading; Mr. Farahan and Mr. Tavlin with 10 counts of Aiding and Abetting Securities Fraud; and Mr. Gantman and Mr. Farahan with six counts of Aiding and Abetting Securities Fraud. (Dkt. No. 1.) The Indictment alleges, generally, that Mr. Tavlin provided material, nonpublic information to Mr. Farahan, who then passed the information to Mr. Gantman, and that Mr. Farahan and Mr. Gantman used the information to trade in the securities of a company. The civil complaint, filed on July 6, 2022, alleges insider trading by Mr. Tavlin, Mr. Farahan, and Mr. Gantman in the securities of Mazor Robotics Ltd. *See* Compl., *SEC v. Tavlin*, No. 22-cv-1723 (DWF/JFD) (D. Minn.).

(*Id.*) Mr. Tavlin therefore asks the Court to direct the United States to review the files of the SEC to locate and disclose any additional exculpatory material. (*Id.*)

In Mr. Gantman's *Brady* motion, he seeks in part (1) information pertaining to co-defendant Afshin Farahan's plea negotiations with the United States, including notes of statements and grand jury transcripts; (2) records of the purchase or sale of Mazor stock or other securities made by Mr. Farahan between 2012 and 2019; (3) Mr. Farahan's notes or recordings; (4) communications between Mr. Farahan, Mr. Tavlin, and Mr. Gantman; and (5) materials concerning the Financial Industry Regulatory Authority ("FINRA") investigation described in paragraphs 14.n–14.q[3] of the Indictment. (Def. Gantman's *Brady* Mot. at 3–4, Dkt. No. 74.)

The United States opposes Mr. Tavlin's and Mr. Gantman's requests to search the SEC's or FINRA's files for information or to produce materials in the sole possession of the SEC or FINRA, arguing that the SEC and FINRA conducted their own civil regulatory investigations and were not part of the criminal prosecution team. (Gov't Resp. at 4, 8, Dkt. No. 78.) The United States asserts that the USAO in Minneapolis, assisted by the FBI, conducted the criminal investigation of the alleged insider-trading conspiracy. (*Id.* at 11.) The United States acknowledges that the USAO obtained documents from the SEC, including documents from third parties and transcripts of depositions taken during the SEC's investigation. (*Id.*) The USAO also separately obtained documents via grand jury subpoenas and did not share or even discuss the documents with the SEC. (*Id.* at 11–12.)

---

[3] The Court believes Mr. Gantman meant to refer to paragraphs 15.n–15.q, as those paragraphs pertain to the FINRA investigation and paragraphs 14.n–14.q do not exist.

The United States also obtained information from 10 interviews of individuals, two of which were attended by the SEC, but both of those interviews were of Mr. Farahan. (*See id.* at 12; Mot. Hr'g Tr. at 18, Dkt. No. 96.[4]) The other eight interviews were conducted without the SEC's presence or knowledge. (Gov't Resp. at 12.)

Meanwhile, according to the United States, investigators in the SEC's regional office in Los Angeles, California, were conducting a separate civil investigation. (*Id.*) As part of that investigation, the SEC deposed Mr. Tavlin and Mr. Gantman. (*Id.*) The USAO did not participate in, attend, or consult with the SEC about the depositions, but the USAO did later obtain the deposition transcripts. (*Id.*) The USAO does not know if the SEC interviewed other witnesses. (*Id.*) The United States represents that the SEC was not involved in the criminal charging decision and that the USAO was not involved in commencing the civil proceeding. (*Id.* at 13.) The United States further represents that it has produced all information it has received from the SEC to the defense. (*Id.*)

As to the FINRA investigation, the United States explains that "FINRA is a national securities association registered with the SEC, which creates and enforces certain rules that govern the securities industry, including investigating whether certain transactions involve insider trading." (*Id.* at 15.) FINRA provided documents to the SEC from its own investigation, and the SEC provided those documents to the USAO. (*Id.*) FINRA's investigation was complete before the documents were forwarded to the USAO, and there was no part of the FINRA investigation that was conducted jointly with the criminal

---

[4] The motion hearing transcript is currently filed under seal, but the Court has not included any personal identifiers or other confidential information in this Order.

investigation and no part of the criminal investigation that was conducted jointly with the FINRA investigation. (*Id.*)

At the hearing on the motions, Mr. Forsgren noted that the FBI approached Mr. Tavlin for an interview in January 2021, and within a week, the SEC contacted Mr. Tavlin with a subpoena. (Hr'g Tr. at 15.) Mr. Forsgren further emphasized that 97% of the document production by the United States bore the SEC's Bates numbers; that Mr. Farahan, "the Government's main witness in this case," was jointly interviewed twice; and that the Indictment was unsealed on the same day the SEC emailed the civil complaint to Mr. Forsgren and asked him to accept service. (*Id.* at 17–18, 23.)

Ms. Svendsen responded at the hearing that the SEC had no knowledge of or involvement in Mr. Farahan's grand jury testimony, recorded conversations between Mr. Farahan and Mr. Tavlin, or the grand jury proceedings. (*Id.* at 33.) The AUSAs also added that the USAO did not confer with the SEC about the content of the Indictment, nor did the SEC confer with the USAO about the contents of the civil complaint, including providing a draft or advance copy, except for a single conversation between Mr. Ebert and SEC counsel. (*Id.* at 36–37.) During that conversation, SEC counsel previewed the forthcoming civil claims, but there was no back-and-forth exchange. (*Id.* at 38.)

Relevant to the *Brady* motions, the Court asked the United States to provide, *in camera* by April 19, 2023, all materials in the possession of the Department of Justice (including the U.S. Attorney's Office for the District of Minnesota, the Federal Bureau of Investigation, and other DOJ components) or the SEC relating to the two interviews of Mr. Farahan attended by the SEC, including, but not limited to, emails, records of phone calls,

5

reports, and FBI 302s. The Court took the motions under advisement on April 19, 2023, after the materials were received. The Court will not describe the contents of the materials since they were provided in camera.

## II.   Discussion

"Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). A defendant must usually identify "a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id.* One such rule is Federal Rule of Criminal Procedure 16(a)(1), which requires the United States to disclose, among other things, and upon the defendant's request, a defendant's oral, written, or recorded statement; and documents and objects within the United States' possession, custody, or control that are material to the defense, intended to be used in the government's case-in-chief, or from the defendant. Fed. R. Crim. P. 16(a)(1)(A), (B), (E). Under *Brady v. Maryland*, the United States must also "disclose any evidence favorable to the defendant . . . that is 'material either to guilt or to punishment.'" *United States v. Primm*, 63 F.4th 1186, 1192 (8th Cir. 2023) (quoting *Brady*, 373 U.S. 83, 87 (1963)). The government's disclosure obligation includes evidence relevant to a witness's credibility. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). A prosecutor also "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

### A.   Materials Solely in the Possession of the SEC

"Where the USAO conducts a 'joint investigation' with another state or federal agency, courts . . . have held that the prosecutor's duty extends to reviewing the materials

6

in the possession of that other agency for *Brady* evidence." *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012).[5] "To determine whether a joint investigation has occurred, courts engage in a case-by-case analysis of the extent of interaction and cooperation between the two governmental agencies." *United States v. Bases*, 549 F.Supp.3d 822, 825 (N.D. Ill. 2021) (cleaned up). A primary factor is the nature of cooperation, such as coordinating witness interviews and investigating the facts of the case. *Id.* Other factors include whether the SEC (or other agency): "(1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018). The contemporaneous filing of an indictment and a civil complaint can also be circumstantial evidence of strategic coordination. *Id.* at *5.

The Court finds here that a joint investigation between the USAO and the SEC did not occur. Having reviewed the materials produced *in camera*, the Court finds they do not support a finding of a joint investigation. The Court classifies almost all of the materials it reviewed in camera as logistical, such as coordinating calendars of FBI agents, AUSAs,

---

[5] The joint investigation in *Gupta* consisted of joint interviews of at least 44 witnesses, during which both counsel for the United States and the SEC asked questions, and after which the SEC attorney consulted frequently with the AUSAs while preparing the interview summaries. *Id.* at 493–94. The SEC interviewed only two witnesses outside the presence of the USAO and FBI. *Id.* at 494. Based primarily on the 44 joint interviews—where the United States and the SEC "investigate[d] the facts of a case together"—the *Gupta* court determined that the agencies were engaged in "joint fact-gathering," thus triggering the United States' *Brady* obligation. *Id.* at 494–95.

7

defense counsel, an SEC lawyer, and Mr. Farahan as to interview dates, flight and hotel arrangements, and so forth. None of the logistical communications discuss the evidence in the case or concern fact-gathering, either directly or indirectly. There is a possible single exception, a one-line email dated July 20, 2021, from an AUSA to an SEC lawyer which reads, "What is the lesser of evils for you if we were to do a call the week of July 26 to discuss evidence?" The Court did not see a reply to this email in the materials produced and will not find the existence of a joint investigation on the basis of a single email that referenced a potential, telephonic discussion of unknown evidence. Of the 10 interviews conducted by the USAO, the SEC attended only two, and those were of the same witness: Mr. Farahan. The USAO did not participate in or attend the SEC's depositions of Mr. Tavlin or Mr. Gantman. The USAO does not know if the SEC interviewed other witnesses. The SEC was not involved in the criminal charging decision, the grand jury proceedings, or the development of the USAO's strategy, nor did SEC counsel attend criminal court proceedings. While the SEC and FINRA shared documents with the USAO,[6] and SEC counsel previewed the civil complaint with AUSA Ebert before it was filed, these facts do not amount to joint fact-gathering. Considering all of the particular facts and circumstances of this case, the Court finds the USAO and SEC did not conduct a joint investigation.

The facts of this case are similar to *United States v. Blaszczak*, 308 F. Supp. 3d 736 (S.D.N.Y. 2018). There, the SEC and USAO "participated in many, though not all, witness

---

[6] All of the materials provided to the USAO by the SEC and FINRA have been provided to the defense.

interviews," contemporaneously "gathered facts," and "ultimately informed each other of their enforcement intentions." *Id.* at 742. On the other hand, the SEC was not involved in the grand jury proceedings, did not attend some interviews, did not review documents gathered only by the USAO, did not strategize with the prosecution, and did not attend criminal proceedings. *Id.* Further, the SEC and the USAO did not recommend any action to each other or participate in each other's decisions. *Id.* The *Blaszczak* court concluded that "the SEC's role here did not bring it within the arm of the prosecutor refinement of *Brady*." *Id.*[7]

In sum, the Court does not find a joint investigation between the USAO and the SEC and therefore denies Mr. Tavlin's motions that the prosecutors be directed to review the files of the SEC for *Brady* materials that are solely in the SEC's possession.

### B.   Mr. Farahan's Plea Negotiations

Pursuant to *Brady*, Mr. Gantman seeks evidence of Mr. Farahan's plea negotiations, including notes of any statements and transcripts of any grand jury testimony. Consistent with the Court's directive at the motion hearing, the United States shall review its records of the plea negotiations with Mr. Farahan and disclose promptly, as *Brady* material, any different or inconsistent statements that he made. (*See* Hr'g Tr. at 59.) Conversations between the USAO and Mr. Farahan's lawyers need not be disclosed. (*Id.*)

---

[7] The *Blaszczak* court adopted the "arm of the prosecutor" language from *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975). *Blaszczak*, 308 F. Supp. 3d at 742 ("Thus, the *Brady* doctrine is directed, first and foremost, at suppression of evidence by prosecutors although, to be sure, it is not—and could not properly be—so rigorously cabined. It extends to anyone who is an 'arm of the prosecutor.'") (quoting *Morell*).

### C.  Records of Mr. Farahan's Stock Trading Between 2012 and 2019

Mr. Gantman has asked for records of Mr. Farahan's stock trading between 2012 and 2019. The United States represented at the hearing that it has produced all of the trading records in its possession and suggested that if Mr. Gantman wants additional records, he should seek a third-party subpoena. (Hr'g Tr. at 60–61.) The Court advised Mr. Gantman's counsel that it would authorize a Rule 17 subpoena for the records counsel sought, and the Court considers this request moot.

### D.  Mr. Farahan's Notes or Recordings

Mr. Gantman next requests any notes or recordings produced by Mr. Farahan as part of the United States' investigation. The United States represented at the hearing that it had produced all such notes or recordings in its possession. The Court considers this request moot.

### E.  Communications between Mr. Farahan, Mr. Tavlin, and Mr. Gantman

Mr. Gantman moves for the production of "relevant communications between" Mr. Farahan, Mr. Tavlin, and Mr. Gantman, "which are not currently in discovery." (Def. Gantman's *Brady* Mot. at 4.) The Court indicated at the hearing that the United States should produce these communications if it has not already done so. (Hr'g Tr. at 62.) The Court now grants Mr. Gantman's motion.

### F.  FINRA investigative Materials

The final category of information listed in Mr. Gantman's *Brady* motion is the FINRA investigative materials, "including investigations into other individuals on the list described in paragraph [15.o] of the indictment." (Def. Gantman's *Brady* Mot. at 4.) To

10

the extent Mr. Gantman relies on a joint investigation theory for production, there is no evidence of a joint investigation involving FINRA and the USAO. The degree of cooperation is even less than that between the SEC and the USAO. FINRA provided materials from its investigation directly to the SEC, which later provided the materials to the USAO. FINRA's investigation had ended by the time the documents were forwarded to the USAO. There is no showing that the FINRA investigation and the criminal investigation were conducted jointly, such as joint witness interviews or other joint fact-gathering. This aspect of Mr. Gantman's motion is therefore denied.

With respect to FINRA's investigations into other individuals, mentioned in paragraph 15.o of the Indictment,[8] Mr. Gantman argued at the hearing that a list of people who purchased Mazor stock based on public information, before the public announcement of the merger, would be favorable evidence, "because it fully supports his position that this stock was well-known in the securities industry and the trading public as a stock that people were interested in." (Hr'g Tr. at 58.) The Court disagrees that such information is

_____

[8] Paragraph 15.o alleges:

> On or about January 8, 2019, TAVLIN learned that FINRA's ongoing inquiry identified: (a) a list of people at Company B—which included TAVLIN—who possessed material, nonpublic information leading up to the public announcement on September 20, 2018, of Company A's acquisition of Company B; and (b) another list of parties who traded in Company B securities prior to the public announcement on September 20, 2018, which included FARAHAN and GANTMAN.

(Indictment ¶ 15.o.)

11

exculpatory. The fact that other people did not break the law is not exculpatory evidence that the accused defendant did not break the law.

### III.   Mr. Tavlin's Supplemental Motion to Compel the Government to Disclose Favorable Evidence

In Mr. Tavlin's supplemental motion, he urges the Court to carefully review the materials produced *in camera*, describes some of the *Brady* material the United States has produced since the motions hearing, and asks that the SEC provide its records "wholesale and without redaction." (Def. Tavin's Suppl. Mot., Dkt. No. 97.) Mr. Tavlin acknowledges that the United States "produced the DOJ Farahan Documents wholesale (i.e., without redactions)." (*Id.* at 6.) Mr. Tavlin posits that "*Brady* and *Giglio* material almost certainly resides in the SEC's records of the Farahan interviews. The SEC's memoranda, including the SEC's rough notes (also in unredacted form), will be equally vital to Tavlin's defense." (*Id.* at 6.)

The question presented by Mr. Tavlin's motions for discovery and favorable evidence is not whether *Brady* or *Giglio* material is in the sole possession of the SEC. It is whether the USAO and the SEC conducted a joint investigation such that the USAO's duty extends to reviewing the SEC's materials for *Brady* evidence. Nothing in Mr. Tavlin's supplemental motion bears on the Court's analysis above of whether a joint investigation occurred. That is, the *Brady* materials described in the supplemental motion do not show the nature and degree of cooperation between the USAO and the SEC, joint coordination or participation in witness interviews or investigation of facts, involvement in grand jury proceedings, the review or exchange of documents, a role in developing prosecutorial

strategy, or attendance at court proceedings  Thus, to the extent Mr. Tavlin asks the Court to order the United States to produce any *Brady* and *Giglio* materials in the sole possession of the SEC, the motion is denied.

Accordingly, based on the above, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' Motions for Discovery Pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3, and 26.2 (Dkt. Nos. 21 and 22) are **GRANTED**.

2. Mr. Tavlin's Motion for Disclosure of 404 Evidence (Dkt. No. 69) is **GRANTED** as to Rule 404(b) evidence and **DENIED** as to Rule 608(b) evidence. No later than 30 days before trial, the United States shall advise Mr. Tavlin of its intent to introduce evidence at trial pursuant to Rule 404(b) and identify such evidence. If the United States discovers any Rule 404(b) evidence after the deadline, it shall produce the evidence as soon as possible. Although this portion of this Order does not extend to evidence that is intrinsic to the charged offense, *United States v. Young*, 753 F. 3d 757, 770 (8th Cir. 2014), the disclosure of such evidence may be required under other legal authority.

3. Mr. Tavlin's Motion for Discovery and Inspection (Dkt. No. 70) is **GRANTED IN PART** and **DENIED IN PART**. The United States shall comply with Fed. R. Crim. P. 16(a) and (c) to the extent it has not already done so. All parties must disclose the identity of any expert witness and make all expert disclosures required by Federal Rule of Criminal Procedure 16 no later than 60 days before trial, and must disclose

13

the identity of any expert who will testify in rebuttal of an expert witness and make

all disclosures as to such expert required by Federal Rule of Criminal Procedure 16

no later than 30 days before trial. The United States need not produce Mr. Tavlin's

statements that are solely in the possession of the SEC.

4. Mr. Tavlin's Motion to Compel the Government to Disclose Favorable Evidence

(Dkt. No. 71) is **GRANTED IN PART** and **DENIED IN PART**. The United States

shall disclose to Mr. Tavlin any evidence that is exculpatory, that is, evidence that

favors the defendant or casts doubt on the United States' case, as required by *Brady*

*v. Maryland*, 373 U.S. 83 (1963). The United States shall also disclose information

that could be used to materially impeach any of its witnesses and shall do so as soon

as it comes into possession of such information. *See Giglio v. United States*, 405

U.S. 150 (1972). The United States need not review the files of the SEC for

exculpatory evidence.

5. Mr. Tavlin's Motion for Government to Retain Rough Notes and Evidence (Dkt.

No. 72) is **GRANTED**.

6. Mr. Tavlin's Motion for Early Disclosure of Jencks Act Material (Dkt. No. 73) is

**DENIED**. The Court does not have authority to order disclosure of the statements

of prosecution witnesses before the conclusion of the witness's direct examination.

18 U.S.C. § 3500. "'Although in many cases the government freely discloses Jencks

Act material to the defense in advance of trial, . . . the government may not be

required to do so.'" *United States v. Wilson*, 102 F.3d 968, 971–72 (8th Cir. 1996)

(quoting *United States v. White*, 750 F.2d 726, 729 (8th Cir. 1984)).

Notwithstanding the above, the United States has agreed to provide Jencks Act material no later than two weeks before trial, provided that Mr. Tavlin provides reciprocal Jencks Act disclosures at the same time.

7. Mr. Gantman's Motion to Compel Disclosure of *Brady* Materials (Dkt. No. 74) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**. The United States shall disclose to Mr. Gantman any evidence that is exculpatory, that is, evidence that favors the defendant or casts doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963). The United States shall also disclose information that could be used to materially impeach any of its witnesses and shall do so as soon as it comes into possession of such information. *See Giglio v. United States*, 405 U.S. 150 (1972). Specifically, the United States shall review its records of the plea negotiations with Mr. Farahan and disclose promptly any different or inconsistent statements that he made. The Court denies as moot the request for records of Mr. Farahan's stock trading between 2012 and 2019 and request for notes or recordings produced by Mr. Farahan as part of the United States' investigation. The Court grants the request for communications between Mr. Farahan, Mr. Tavlin, and Mr. Gantman, to the extent those have not yet been produced. The Court denies the request for evidence of FINRA's investigations into other individuals. The United States need not review the files of the SEC or FINRA for exculpatory evidence.

8. Mr. Gantman's Motion for Government to Disclose Evidence Pursuant to Federal Rule of Evidence 404(b) (Dkt. No. 75) is **GRANTED**. No later than 30 days before

trial, the United States shall advise Mr. Gantman of its intent to introduce evidence at trial pursuant to Rule 404(b) and identify such evidence. If the United States discovers any Rule 404(b) evidence after the deadline, it shall produce the evidence as soon as possible. Although this portion of this Order does not extend to evidence that is intrinsic to the charged offense, *United States v. Young*, 753 F. 3d 757, 770 (8th Cir. 2014), the disclosure of such evidence may be required under other legal authority.

9. Mr. Gantman's Motion for Government to Retain Rough Notes (Dkt. No. 76) is **GRANTED**.

10. Mr. Gantman's Motion to Compel Affirmance or Denial of Unlawful Acts (Dkt. No. 77) is **DENIED AS MOOT** based on the United States' representation at the hearing that all recordings have been disclosed.

11. Mr. Tavlin's Supplemental Motion to Compel the Government to Disclose Favorable Evidence (Dkt. No. 97) is **DENIED**.


Date:  May 16, 2023                    *s/ John F. Docherty*
                                       JOHN F. DOCHERTY
                                       United States Magistrate Judge